Good morning. Please be seated. First case is West View Research, the Audi. Counselor, ready to proceed? Good morning. May it please the Court. My name is Adam Garson and I represent Plaintiff Appellant West View Research. There are four key areas where the District Court erred in finding the original and alternative claims asserted in this litigation invalid under Section 101. Let me ask you a question. This is really going to be for both counsel. We've received letters from both parties updating us on eight related IPR proceedings. Keeping those in mind, what's the status of the alternative claims before this Court? The alternative claims were unaffected by the IPRs and therefore those 32 claims are still in play. Of the original claims, all but the seven original claims of the 777 patent were either voluntarily canceled or a request for adverse judgment was filed during the IPR proceedings. Thank you. Just curious, why were they disclaimed or you filed a request for an adverse judgment against all of those claims? Those were strategic considerations, strategic decisions that we made primarily to conserve client resources in order to be able to continue this appeal and pursue other business activities for West View Research. What about the allegation that you have not appealed the District Court's decision denying your leave to assert the alternative claims? We believe that that's spurious, Your Honor. You did? We did appeal the District Court's decision refusing leave. The District Court predicated its decision on not granting leave to amend based on its erroneous findings under Section 101. It's clear from the record that had the District Court conducted a proper 101 analysis under Prompts 1 and 2 of Alice, the District Court would have found the alternative claims valid under Section 101. Which claims should we be looking at if those claims no longer exist, the original claims? You're saying in order for us to see whether the denial of your request to provide alternative claims is based on whether the 101 analysis was correct with respect to those claims that no longer exist? With respect to the alternative claims. With respect to the alternative claims. The District Court found the alternative claims invalid under Alice erroneously, and had the District Court conducted the proper analysis of those 32 alternative claims, the record says that leave would have been granted and we would have proceeded on those alternative claims. I guess that's what I'm trying to figure out. Let's hypothetically say this Court affirms what happened below. Would an affirmance mean that we are affirming the invalidation of all your proposed alternative claims? Because as I understand the way your motion was filed, it was a motion to add these claims for consideration, and then the judge below concluded, no, these claims are really not meaningfully different than the actual claims that were initially asserted and ruled to be invalid under 101, so I'm going to deny your motion to add the claims to the case. So affirming that denial of your motion, it's not clear to me that it necessarily invalidates those claims, although it was necessarily based on the view that those claims are no better under Section 101. Is that a fair way to understand what an affirmance here would mean for your alternative claims? I don't believe so. I believe, and I believe this is also reflected in Appellee's brief, that in the March 31st order, the District Court, in finding that the claims were not different and were directed to an abstract idea and contained nothing that could be characterized as significant or more under the second prong of Alice, did invalidate those 32 claims. And that was also reflected in Appellee's brief as well. Okay. I mean, I see that in her conclusion section it says, Westview's motion is to proceed on these substitute claims, therefore are denied. And I guess you're saying, not only did she deny her motion to proceed on those substitute claims, she also invalidated those substitute claims. That's our position, and we also think that had she done the correct analysis, she would have allowed us to proceed on those claims. Did you raise that issue in your blue brief? Pardon? Did you raise that issue in your opening brief? I don't recall, Your Honor. Let me ask you a question about your standard of review. In the blue brief of 3132, you argue ultra-martial, the Hulu, clear and convincing standard. Then you have a footnote that acknowledges that the ultra-martial case was vacated by the Supreme Court in light of Alice. And when we issued ultra-martial 2, nowhere do we use a presumption of validity requiring clear and convincing standard, and yet you seem, your brief continues to rely on ultra-martial 1 for that proposition. And I don't see how you can continue to do that. We're aware that ultra-martial 1 was one in a series of three or four cases that have been brought before this Court, but it is Westview's position that clear and convincing is the appropriate standard for a finding of 101 in validity. Despite the next ultra-martial. We don't rely on that standard anymore in that case. Then I apologize, Your Honor. Let me ask you this. Given that, this is something that bothers me. In the gray brief, 4142, you say defendants assert that WVR has not appealed the district court's decision to deny WVR leave to assert the alternative claims. This assertion is flatly contradicted by the record. And then you say WVR, in fact, explicitly appealed the district court's decision. And you say defendants appear to purposely mislead the court to the contrary. Now, an accusation of an attorney intentionally misleading the court is extremely serious. Do you have any proof that demonstrates that Appellee's intentionally misled the court? Because it's the kind of thing that should go to a bar if that were true. We don't have proof that they misled the court. Westview believes that the court was inviting... Stop there. Because making a groundless accusation is also something that should go to the bar. I think that that's possibly being misinterpreted. Westview's position is that Appellee's were inviting the court to error by taking the view that Westview was not appealing the invalidation of the 32 alternative claims as part of the I think what they were saying was that you didn't specifically appeal from the dismissal. And that doesn't actually come from your notice of appeal. It comes from your opening brief. Regardless of what issues you identify in a notice of appeal, your opening brief then further defines the issues that are properly before this court. And so that's why I asked you earlier if your blue brief raised the issue of whether the district court erred when it denied your alternative claims. The blue brief does contain a significant amount of information about how the district court erred in its one-on-one analysis of the 32 alternative claims. And as I stated previously, the district court's denial of leave was predicated on that erroneous analysis. For example, the district court determined the first step of Alice at too high a level of generality, not in accordance with this court's precedent. The district court refused to consider the components of Westview's inventions as part of an ordered combination, including the algorithms, software, and user interface. I wanted to ask you about something also in your reply brief where you argue that when considering whether a claim is directed to an abstract idea, this court must take into consideration whether the claim includes means plus function limitations. You've cited the MDOX case for that, I think, three times in the gray brief. Are you aware that that's the dissent that's saying that? You're citing the MDOX dissent for that position? We're aware, and we do believe that that's the better position. Why did you note that that was the dissent if you were aware of the fact that you were citing the dissent? I don't know, Your Honor. I, again, apologize for if we should have done that and didn't. Was that intentional? No, Your Honor. Are you familiar with this court's opinion in Electric Power Group? I am. Okay. How come you didn't cite it or discuss it in your gray brief when the two red briefs are discussing Electric Power Group in great, punishing detail, and, in fact, I think it is highly relevant? Your Honor, we don't think that this case is analogous to the case that you referred to. Electric Power Group? Yes. We think that the case here presents different issues and that Westview's claims are distinguishable. How? For example, in the incident case, the court said that the claims cite no more than generic computer components functioning in their conventional manner to provide information to a user, which is, we think, not accurate with respect to Westview's claims. For example, there's no evidence that the combination of components or hardware architecture or algorithms or logical flows or data structures were known in generic at the time. This case was decided pursuant to a motion for judgment on the pleadings with no evidence before the court. And at this stage, evidentiary presumptions should have been made in Westview's favor, but they weren't. And while several of the components are admittedly off-the-shelf products, several of them are not. They're not generic. For example, the software, the algorithms, the user interface, the virtual database, which are undoubtedly components of this system, are custom and not generic. Additionally, several of these components don't function in a conventional manner. Is there something in the patent specification that says that some of these components are very special and that the inventor here actually invented those particular components? There is information in the specification. I understand that Judge Benspango pointed to Column 7, Column 8 of your patent specification at A145, where after you go through some examples of different components and maybe how they would fit together, it communicates from the elevator to a server and then back to the elevator. It says in the specification, it will be appreciated that many different arrangements for the disposition of various components within the system, including inter alia, the processor, motherboard, storage devices, server, and memory, and the transfer of data and signals there between are possible, all of which are encompassed within the scope of the present inventions. So, very quickly, I can see where the lower court was seeing this proclamation in the specification as saying, yes, I've provided some examples of how to get information from A to B and then from B to A, but all of that is just standard off-the-shelf arrangements, and there's many, many, many other arrangements that can do it, and all of them are encompassed, and so, therefore, there's no specific arrangement configuration of well-known components that I'm actually specifically restricting myself to. Your Honor, I'm well into my rebuttal time, but can I answer your question? Yeah. The district court erred because, and this goes back to the 1126 issue that we discussed earlier, in failing to interpret the claims in light of the specification, the district court didn't take into consideration the hardware architecture in Figure 1, the algorithms in Figure 4 of the specification, the virtual data structure in Figure 18B of the specification, and had the district court looked at those and imported that into the claim language, the district court would have seen the level of detail and specificity that Your Honor was just referring to. Which claim would you like us to focus on? You need to go sit down, but what claim? I'd like you to focus on Claim 63 of the 038 patent and Claim 29 of the 156 patent, both of which were presented in Table 3 on Page 24 of the Blue Brief. Very good. Thanks. Proceed, Your Honor. Please do. Good morning. May it please the Court. Garland Stephens representing Tesla Motors and the other defendant appellees. I'd like to first address the Court's question about the claims that are on appeal. I think we're in agreement that the asserted claims of the 777 patent and all of the alternative claims are before the Court. And also, it is true that Judge Benjamingo did hold all of the alternative claims invalid. That's in the last sentence, I believe, of her conclusion, where she says, further B.W.'s motion for judgment on the pleadings, Docket Number 79 is granted, for all the same reasons discussed in the Court's prior order granting judgment on the pleadings, which she cites there. So she did, in fact, hold all of the claims that are before the Court invalid, in addition to denying leave to assert those. Okay, so you had a motion for judgment on the pleadings with respect to the alternative claims, seeking to invalidate all of the alternative claims? That's correct. That's Docket Number 79 in the 2668 case. Is that in the joint appendix? I'm sorry? Is that in the joint appendix? I don't know, Your Honor. Okay. I'm not sure. In 1999, Westview's founder, Robert Kaczynski, filed a patent application on Smart Elevator. And that application forms the basis for all of the patents and claims that suit. They say nothing about automobiles whatsoever. And yet, in the district court below, Westview maintained that those patents give them a broad monopoly to a broad range of human interactions with machines, primarily spoken interactions with machines. Each and every one of the claims before the Court today is directed to typical human activities, but performed on generic computer hardware. All of the claims are directed to some variation of the same abstract idea, providing information in response to a user input or request. And that, of course, is a basic human activity. The computer hardware and software claims— You can start with when we read your brief. Okay. Fair enough, Your Honor. So I think the claims that have been discussed before the Court are all directed to that same abstract idea. And all of the hardware is recited generically. Of course, as Judge Chen observed and Judge Benchimago explained at some length, all of that hardware is described as off-the-shelf, standard hardware. And in the claims, it is specifically recited in that generic way. And it's not recited as performing any functions other than what it is normally understood to do. So there's really nothing in the claims other than basic human behavior and generic computer hardware. How do you respond to Mr. Garson's argument that the software, the algorithms, and the user interface are something new and different that's not in the primary? It's not reflected in the claims. I don't think that's really present in the specification either, but that's not the question before the Court. The question before the Court is whether it's in the claims, and it's not. The claims simply refer to things like digitizing speech and, based on that speech, providing an indication of a location on an app. That's what all the claims are directed to, and there's essentially nothing about how that's performed, and that's critical. If they'd actually written claims that were directed to how these activities and behaviors were implemented, then they wouldn't have this broad preemption that they claim to have. The claims would be narrow. They'd be addressed to some specific technical solution. Are there any claims that are truly means-plus-function claim limitations? There is one claim, which I believe is Claim 47 of the 038 patent, if I have the number right, which has a means for processing and a capacitative display means. But if you were to interpret those to cover the processors that are described as generic in the specification and the capacitative displays that are described as generic and off-the-shelf items in the specification, it would have no effect whatsoever on the 101 analysis. Is that also the description of those? Do you find that in Column 7 of the shared specification? Yes, I believe that's right. In the 156 patent, it varies a bit from specification to specification, even though the disclosure is identical. But the 156 patent is the one that Judge Benchimango cited, and I believe that's right. And not only that, the specification says that the specific combination and arrangement of these generic computer components also is not part of the invention, and the invention covers all such arrangements. Judge Benchimango relied specifically on that recitation of generic hardware and the fact that the specific arrangement really didn't affect the invention in deciding that these claims were directed to basic human activities on generic hardware, and therefore held them all invalid. Just curious, what if we didn't have that statement that I read out of the specification a few minutes ago, and then all we had was some diagrams that look kind of complicated with a bunch of circuitry and signal lines going back and forth between them? I mean, would we be able to conclusively say under those circumstances for a Rule 12 motion that all of that is just conventional configuration of known components? I think so, because I think you can tell from the specification and those drawings that it is nevertheless generic hardware. Right, but we wouldn't know, we wouldn't have any confidence that it's a conventional configuration of all those generic components or known components. Fair enough. It certainly helps that the applicant admitted that in the specification. However, I think if you look at those figures, you'll see it's recited as a processor or DMA or memory, and things that are really indisputably well-known and reflected in the opinions of this Court. Right, but I'm talking about the configuration of all those components. There's ways to take known components, combine them in ways that are novel and perhaps non-obvious, and then all of a sudden we have a very non-conventional configuration of those known components. True, that's true. Would that be really appropriate to knock out under Rule 12 for Section 101? I think the answer would be no. Well, I think the answer might not be no if that structure, which you could not tell from the face of the patent, was generic or not reflected in the claims. Here, that's not the case. Here, there's merely a recitation of a processor or a processing means and a storage means or a storage device, and nothing about the specific configuration. 21 is pretty generic. Yes. Description. So it recites these pieces of a computer system that does not describe how they're connected together. Well, unless the Court has other questions, I'll sit down. Thank you, counsel. Thank you. Oh, look at this. Do you have something more to say? I do. Thank you. Yes. Your Honor, I asked if the motion for judgment on the pleadings is in the appendix, and it is, in fact, at 2728. Thank you. Good guess. Make that a minute. I'll give you all time. One. Thank you, Your Honor. In light of what Mr. Stevens just said, he was correct in pointing to Claim 47 of the 839 patent as being expressly a means claim. However, there are a number of other claims that, while not reciting means, still have to be analyzed under 112.6 because they are functional without reciting sufficient structure, and I point the Court to perhaps Claim 14 of the 156 for that. And secondly, Mr. Stevens. Is that an alternative claim? That is an alternative claim, Your Honor. And I'd also like to address Mr. Stevens' opening point about these being elevator patents. These are not elevator patents. The specification explicitly states that the technology can be used in other transport apparatuses, including shuttles. Nearly all of the original independent claims from the grandparent application were not limited to elevators. The computer systems in these elevators are sophisticated and comparable to computer systems outside that context. Thank you, Your Honor. Thank you. If Judge Lurie was here, you'd have a lot of references to the case having its ups and downs, but I'm not going to.